CONOCO, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 83–1068.

United States Court of Appeals,
Tenth Circuit.

Aug. 9, 1984.

Rodney L. Smith of Eiberger, Stacy &
Smith, Denver, Colo. (with Christina Rich-
ard, Houston, Tex.), for petitioner.

Jerrold Wohlgemuth, Washington, D.C.
(with Elinor Hadley Stillman, William A.
Lubbers, Gen. Counsel, John E. Higgins,
Jr., Deputy Gen. Counsel, Robert E. Allen,
Acting Associate Gen. Counsel, and Elliott
Moore, Deputy Associate Gen. Counsel,
Washington, D.C., on brief), for respon-
dent.

Before    McWILLIAMS,    BREITEN-
STEIN, McKAY, Circuit Judges.

McKAY, Circuit Judge.

In this·case we review the finding of the
National Labor Relations Board that peti-
tioner, Conoco, Inc., committed an unfair
labor practice, in violation of sections
8(a)(1) and (3) of the National Labor Rela-
tions Act.  29 U.S.C. §§ 158(a)(1) and (a)(3)
(1982).[1]  Conoco seeks reversal of the order
and the NLRB seeks enforcement.

1.  Sections 8(a)(1) and 8(a)(3) provide:
(a) It shall be an unfair labor practice for an
employer—

(1) to interfere with, restrain, or coerce em-
ployees in the exercise of the rights guaran-
teed in section 157 of this title;

The parties do not dispute the pertinent facts. Ms. Patricia Fransen was a Conoco employee and was a member of the Oil, Chemical and Atomic Workers International Union AFL–CIO, the collective bargaining representative of the production and maintenance employees. On January 3, 1980, Ms. Fransen became unable to work due to medical reasons and began receiving disability payments pursuant to the Comprehensive Disability Income Plan (the Plan) included in the collective bargaining agreement in effect between Conoco and the Union. On January 8, 1980, the Union commenced a lawful economic strike. Although Ms. Fransen was still in the hospital on January 8, Conoco discontinued her disability payments as of that date. Termination of Ms. Fransen's disability benefits was purportedly based on subsection 4 of the "Denial of Benefits" section of the Plan, which provides that benefits can be cut off in the following situation:

> If benefits are being paid prior to a strike or layoff, such benefits will cease for the duration of such strike or layoff. No benefits will be paid during the time you are on strike or layoff.

Record, vol. 2, at 604–05.

Conoco sent a letter to its striking employees on January 15, which reminded them that "coverage under the [Plan] is discontinued for employees on strike." Record, vol. 2, at 610–12. On February 20, while still on disability, Ms. Fransen began actively participating in the strike by picketing for the Union. Ms. Fransen's doctor authorized her to return to work commencing March 25, 1980. The strike ended on April 1, 1980, and the employees returned to work on April 2nd.

The NLRB filed a charge alleging that termination of Ms. Fransen's disability benefits constituted an unfair labor practice. After a hearing, the Administrative Law Judge found that the NLRB's general counsel had made out a prima facie case that Conoco had violated 8(a)(1) and (3) by terminating Ms. Fransen's benefits. He rejected Conoco's defense, which was predicated largely on subsection 4 of the "Denial of Benefits" section of the Plan. The ALJ assumed for the purpose of his decision that the Union had agreed to that subsection and that it was not an illegal provision. However, he found the provision so ambiguous that it could not be said clearly to apply to Ms. Fransen. Rather, he found from the provision's second sentence and Conoco's January 15 letter to its employees, that the restriction on the payment of benefits under the Plan applied only to those employees who were "on strike." Because the ALJ concluded that while hospitalized Ms. Fransen could not be "on strike," he found that the subsection on which Conoco relied did not apply to her.

Relying on the NLRB's decision in *E.L. Wiegand Division, Emerson Electric Co.,* 246 N.L.R.B. 1143 (1979), *enforced as modified,* 650 F.2d 463 (3d Cir.1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982), the ALJ awarded Ms. Fransen disability benefits from January 9 through February 21, 1980. He ruled that because Ms. Fransen indicated public support for the strike on February 22nd, by participating in the Union's picket line, she was not entitled to disability benefits beginning that date.

On appeal to the Board, the Board agreed that discontinuance of Ms. Fransen's disability pay on January 8, 1980, was an unfair labor practice. However, the

---

* * * * * *

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization....

29 U.S.C. §§ 158(a)(1) and (a)(3) (1982).

Section 7 of the Act provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities....

29 U.S.C. § 157 (1982).

Board ordered Conoco to make Ms. Fransen whole by paying her the disability from January 9 through March 24, 1980, the last day she was medically disabled, and to post an appropriate notice. The Board adopted the Third Circuit's modification of *E.L. Wiegand Division, Emerson Electric Co.,* 246 N.L.R.B. 1143 (1979), *enforced as modified,* 650 F.2d 463 (3d Cir.1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982), along with the views of Member Jenkins, expressed in his separate *Emerson* opinion, and overruled its *Emerson* decision to the extent it provided a remedy inconsistent with the remedy ordered here. The Board held that "where an employer because of a strike unlawfully terminates accrued benefits it has previously provided disabled employees, we shall order that employer to provide to such employees the amount of the disability payments, plus interest, that the employee otherwise would have received after the date the employer terminated the disability benefits." Record, vol. 3, at 695–96. Where an employee has earned accrued benefits, and those benefits are illegally terminated because of a strike, the employee is entitled to those benefits until the disability has ended or the contractual right to receive the benefits has run out. Record, vol. 3, at 690–91. The Board further found that withholding accrued benefits merely because the disabled employee approves of or participated in a lawful strike is inherently destructive of the employee's section 7 rights. Record, vol. 3, at 695; *Emerson,* 650 F.2d at 474. Thus, Ms. Fransen was entitled to disability benefits until she was released from medical disability, not merely until she indicated support for the strike.

On appeal to this court, Conoco does not challenge the NLRB's position as to the appropriate remedy. Rather, Conoco argues that the Board improperly assumed that the disability benefits were "accrued" benefits, and that the record does not contain substantial evidence to support such a finding. Further, Conoco contends that it had a legitimate business justification for withdrawing the disability payments and therefore did not commit an unfair labor practice.

Our standard of review is whether the Board's findings of fact are supported by substantial evidence. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). With respect to other aspects of the Board's decision, we are mindful that the NLRB has been delegated the function of balancing the conflicting interests of employer and employees, subject to limited judicial review. After studying the record and caselaw on point, we hold that there is substantial evidence to support the NLRB's finding that Conoco's withdrawal of Ms. Fransen's disability benefits constituted an unfair labor practice.

■ The unfair labor practice charged here is grounded primarily in section 8(a)(3), 29 U.S.C. § 158(a)(3) (1982), which specifically requires proof that disparate treatment has been accorded union members and that the employer's action is likely to discourage participation in union activities. While not all employer actions which might have the effect of discouraging union membership are illegal, actions that are motivated by anti-union animus are illegal. *Metropolitan Edison Co. v. NLRB,* 460 U.S. 693, 103 S.Ct. 1467, 1473, 75 L.Ed.2d 387 (1983).

Where there is only circumstantial evidence of anti-union animus, the Supreme Court has set out a two-prong standard of proof for determining whether the employer has committed an unfair labor practice.

First, if it can reasonably be concluded that the employer's discriminatory conduct was "inherently destructive" of important employee rights, no proof of an anti-union motivation is needed and the Board can find an unfair labor practice even if the employer introduces evidence that the conduct was motivated by business considerations. Second, if the adverse effect of the discriminatory conduct on employee rights is "comparatively slight," an anti-union motivation must be proved to sustain the charge *if* the employer has come forward with evidence of legitimate and substantial busi-

ness justifications for the conduct. Thus, in either situation, once it has been proved that the employer engaged in discriminatory conduct which could have adversely affected employee rights to *some* extent, the burden is upon the employer to establish that he was motivated by legitimate objectives since proof of motivation is most accessible to him.

*NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26, 34, 87 S.Ct. 1792, 1798, 18 L.Ed.2d 1027 (1967) (emphasis original). *See also Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 103 S.Ct. 1467, 1473–74, 75 L.Ed.2d 387 (1983).

In *Great Dane*, the Court held that a refusal to pay accrued benefits to those participating in an economic strike was an unfair labor practice, even absent proof of an improper motivation by the employer. The Court agreed with the Board's charge that the employer's policy relating to vacation pay clearly concerned a "term or condition of employment." Since the employer allegedly discriminated between striking and non-striking employees with regard to that condition of employment, the complaint stated "an unfair labor charge in simplest terms." *Id.* at 30 & n. 7, 87 S.Ct. at 1796 & n. 7. There was no proof of anti-union animus in *Great Dane*, and no proof of a legitimate and substantial business justification. While the Court made no finding as to whether withholding accrued benefits is "inherently destructive" of important employee rights, it is clear that at the least, such an action adversely affects an employee's rights to some extent.

Conoco argues that there was no unfair labor practice here because, unlike *Great Dane*, the benefit withdrawn was not accrued and Conoco had a legitimate and substantial business justification for withdrawing the benefit. Conoco also contends that

the withholding of disability pay benefits during an economic strike is not "inherently destructive" of an employee's rights, and thus there was no unfair labor practice under either of the *Great Dane* standards of proof. We do not need to reach this latter contention because even under the second part of the *Great Dane* test, we find that the evidence presented is not as a matter of law sufficient to establish a business justification. Thus, the Board was not required to make a specific showing of anti-union animus. We conclude that the Board properly found that Conoco committed an unfair labor practice, the Board properly found that the withheld benefits were accrued, and properly rejected Conoco's attempt to establish a business justification.

■ The test for whether benefits are accrued [2] is "whether they are due and payable on the date on which the employer denied them." *E.L. Wiegand Division, Emerson Electric Co. v. NLRB*, 650 F.2d 463, 469 (3d Cir.1981), *cert. denied*, 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982). In *Emerson*, the court noted that the benefits had the distinguishing characteristics of accrued benefits. The length of period of payment was tied to length of service, and did not depend on any return to work or on any future service to the employer. The Court thus found the benefits to be accrued even though they were tied to the condition of disability. Conoco argues that since the benefits here are not based on seniority they are not accrued. The NLRB, on the other hand, argues that the seniority factor is only evidence of accrual and that since the benefits here do not depend on return to work or on any future services to the employer, but rather arise out of the existence of the employment relationship itself, the benefits are accrued.

2. It is not altogether clear whether accrual versus non-accrual of a benefit is the key to analyzing these cases. In the Third Circuit's review of the *Emerson* case, the court carefully analyzed whether the benefits in question were accrued. 650 F.2d at 468–69. Likewise, in *Texaco, Inc. v. NLRB*, 700 F.2d 1039, 1041 (5th Cir.1983), the Fifth Circuit considered whether the benefits at

issue were accrued. However, in *NLRB v. Sherwin-Williams Co.*, 714 F.2d 1095 (11th Cir.1983), the issue of whether the benefits were accrued was not addressed. We do not need to reach this issue because we find that the Board correctly determined that the benefits in question here were accrued and that this case falls squarely within the *Great Dane* framework.

■ What factors are relevant to whether particular benefits are "due and payable on the date on which the employer denied them" may differ in each case. While both of the factors discussed in *Emerson* are relevant here, they do not provide a definitive determination of whether Ms. Fransen's disability benefits were accrued. Rather, whether the benefits here were due and payable on the date denied, and therefore accrued, depends on the interpretation of the contract provision governing denial of disability payments in the event of a strike. Ms. Fransen was receiving disability benefits from January 3 through January 7, 1980. She was still on disability the day the Union went on strike and her disability payments were terminated. Unless some contract provision waived Ms. Fransen's right to continue receiving disability, the benefits were also due and payable on January 8, continuing through the time she was released from disability. While a union may bargain away a member's statutorily protected rights, waiver of a protected right must be expressed clearly and unmistakably. Waiver will not be inferred, but must be explicit. *Metropolitan Edison Co. v. NLRB*, 460 U.S. at 708 & n. 12, 103 S.Ct. at 1477 & n. 12.

■ The Board and the ALJ interpret the contract language differently than does Conoco. The Board and the ALJ construe it to mean that only employees who are "on strike" are denied disability benefits. As long as an employee is disabled before the strike began, that employee is not on strike until released from disability, *Emerson*, 650 F.2d at 474, and, therefore, subsection 4 of the Denial of Benefits section of the collective bargaining agreement does not apply to that employee. Conoco, however, interprets the provision to mean that all employees, whether on strike or not, and whether disabled prior to or after the beginning of a strike, will be denied disability benefits for the duration of the strike. Even if we were to hold that the contract provision standing by itself is ambiguous, Conoco's letter of January 15, 1980, belies the company's argument. As we have already noted, that letter outlined the status of benefits for employees on strike. Nothing in the letter indicated that the benefits of employees who were not on strike were affected. This contract section cannot even be remotely interpreted to mean that the Union clearly, unmistakably and explicitly waived the rights of both employees who were on strike and employees who were not on strike. Thus, we hold that Ms. Fransen's disability benefits were accrued benefits.

Under the *Great Dane* test, if the employer presents evidence of a legitimate and substantial business justification for withholding accrued benefits, the NLRB must then prove anti-union animus. Conoco argues that it established a sufficient justification in that it reasonably interpreted and in good faith relied on the terms of the Plan. In support of its position, Conoco relies on *NLRB v. Borden, Inc., Borden Chemical Division*, 600 F.2d 313, 321 (1st Cir.1979); *Vesuvius Crucible Co. v. NLRB*, 668 F.2d 162, 167 (3d Cir.1981); and *NLRB v. Sherwin-Williams Co.*, 714 F.2d 1095, 1101 (11th Cir.1983). These cases hold that proof of good faith reasonable reliance on the terms of the collective bargaining agreement is sufficient to establish a substantial and legitimate business justification. Further, the NLRB may not formulate its own interpretation of the contract, but is limited to determining the truth of the employer's assertions regarding its contractual obligations, based upon "the reasonableness and bona fides with which [the employer] held its belief." *Vesuvius Crucible*, 668 F.2d at 167.

■ We do not dispute these general principles. However, in light of our previous discussion as to whether the Union had waived the rights of both striking and nonstriking employees, and Conoco's own interpretation of the contract provision as evidenced by its January 15 letter, we find that there is substantial evidence to support a finding that Conoco did not reasonably believe it had the right to terminate Ms. Fransen's disability payments.

Thus, we find that there is substantial evidence to support the Board's conclusion that Conoco committed an unfair labor practice.

The Board's order as to Ms. Fransen, as well as the Board's order finding a violation of the National Labor Relations Act for improperly disciplining four employees accused of picket line misconduct,[3] is enforced.

---

**3.** Conoco did not seek review of the portion of the Board's order finding a violation with respect to the improper discipline of the employees accused of picket line misconduct.