834 F.2d 837
 127 L.R.R.M. (BNA) 2070, 107 Lab.Cas. P 10,239
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
and
Local 3-436, International Woodworkers of America, Intervenor,
v.
ROCKWOOD & COMPANY and W.H. Gonyea Trust No. 1-17 d/b/a
Timber Products Company, Respondent.
 No. 87-7023.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 9, 1987.
Decided Dec. 18, 1987.
 
 Elaine Patrick, N.L.R.B., Washington, D.C., for petitioner.
 Douglas S. Mitchell, Cass, Scott, Woods & Smith, Eugene, Or., for respondent.
 Monica A. Smith, Kulongoski, Durham, Drummonds & Colombo, Portland, Or., for intervenor.
 Appeal from the National Labor Relations Board.
 Before WRIGHT, WALLACE and PREGERSON, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 The employees of Rockwood & Company and W.H. Gonyea Trust No. 1-17 d/b/a Timber Products Company (collectively "the Company") at its Medford, Oregon facility engaged in an economic strike during negotiations for a new collective bargaining agreement. After the strike collapsed, the Company committed numerous acts that were found by the National Labor Relations Board ("the Board") to be unfair labor practices. The Company appeals from only three of the Board's determinations: (1) the Board's finding that the Company committed an unfair labor practice when it failed to reinstate twenty employees who were on layoff when the strike began, who were invited back to work, but who participated in picketing; (2) the Board's finding of an unfair labor practice in the Company's failure to reinstate four former strikers for work on a "spreader crew"; and (3) the Board's finding of an unfair labor practice in the Company's termination of Jose Acosta, a temporarily reinstated employee who refused for medical reasons to take the job of cleaning glue tanks. The Board seeks enforcement of its order.
 
 I. BACKGROUND
 
 2
 The Company and Local 3-436, International Woodworkers of America ("the Union"), which represents the workers in the Medford facility, have had a collective bargaining agreement since 1966. The most recent collective bargaining agreement between the parties expired on May 31, 1983. After negotiations for a new agreement were unsuccessful, the employees engaged in a work stoppage and strike beginning on August 19, 1983. Over twenty employees who were laid off before the strike participated in the picketing.
 
 
 3
 On September 21, the Company sent a letter to all the employees who walked out and to all the employees who were on layoff status when the strike began. The letter stated that the Company wanted to make the plant operative and that it would be taking job applications because it wished to permanently replace those who wished to continue to strike. The letter also suggested that employees wishing to return to work contact the Company immediately. By September 28, the Union gave up the strike and wrote to the Company communicating on behalf of all striking employees an unconditional offer to return to work.
 
 
 4
 On October 11, the parties arrived at a new collective bargaining agreement. The Company, however, refused to sign and honor the new agreement. In an earlier action, we upheld by an unpublished memorandum the Board's finding that the Company's failure to honor the agreement was an unfair labor practice.
 
 
 5
 On September 6, 1984, approximately eleven months after the parties arrived at the new agreement, the Company withdrew recognition from the Union. Thereafter, the General Counsel brought unfair labor practice charges against the Company, and the Board found that the Company had committed numerous unfair labor practices. Only three of those acts are at issue in this appeal.
 
 II. DISCUSSION
 
 6
 We will enforce the Board's order "if the Board correctly applied the law, and if the Board's findings of fact are supported by substantial evidence on the record viewed as a whole." NLRB v. Nevis Indus., Inc., 647 F.2d 905, 908 (9th Cir.1981). The Board's interpretation of the NLRA "is entitled to considerable deference." Id. If the Board's findings are supported by substantial evidence, we must enforce them, even if we might reach a different conclusion from the same evidence. Id.
 
 
 7
 Each of the unfair labor practice charges at issue in this appeal involves an employer's duty to offer reinstatement to its employees after an economic strike.
 
 
 8
 The National Labor Relations Act ("NLRA") includes within its definition of "employee" an individual "whose work has ceased as a consequence of, or in connection with, any current labor dispute ... and who has not obtained any other regular and substantially equivalent employment." 29 U.S.C. Sec. 152(3). Thus, a striker continues to be an employee within the meaning of section 152(3) until he or she has obtained substantially equivalent employment. While strikers may be permanently replaced during the strike, NLRB v. Mackay Radio & Telegraph Co., 304 U.S. 333, 345-46, 58 S.Ct. 904, 910-11, 82 L.Ed. 1381 (1938), once the strike is over they are entitled to reinstatement to available jobs. "If and when a job for which the striker is qualified becomes available, he is entitled to an offer of reinstatement. The right can be defeated only if the employer can show 'legitimate and substantial business justifications.' " NLRB v. Fleetwood Trailer Co., 389 U.S. 375, 381, 88 S.Ct. 543, 547, 19 L.Ed.2d 614 (1967) (quoting NLRB v. Great Dane Trailers, 388 U.S. 26, 34, 87 S.Ct. 1792, 1798, 18 L.Ed.2d 1027 (1967)).
 
 
 9
 The Court in Fleetwood explained the legal basis for the reinstatement requirement as follows:
 
 
 10
 If, after conclusion of the strike, the employer refuses to reinstate striking employees, the effect is to discourage employees from exercising their rights to organize and to strike guaranteed by Secs. 7 and 13 of the Act. Under Secs. 8(a)(1) and (3) it is an unfair labor practice to interfere with the exercise of these rights.
 
 
 11
 Fleetwood, 389 U.S. at 378, 88 S.Ct. at 546.
 
 
 12
 A. Reinstatement of Picketing Laid-off Employees
 
 
 13
 After the Company refused to recognize the union, it unilaterally terminated the reinstatement, seniority, and employment rights of all employees who were on layoff status when the strike began. The Administrative Law Judge ("ALJ"), whose order the Board affirmed, found that the laid-off individuals who were recalled but chose instead to picket were striking employees entitled to reinstatement. This holding is a correct application of the law and is supported by substantial evidence.
 
 
 14
 The critical question about individuals on layoff status when a strike is called is whether they are in fact "strikers" and thus continue to be "employees" under the NLRA. See Brinkerhoff Signal Drilling Co., 264 NLRB 348 (1982); Conoco, Inc., 265 NLRB 819, 821 (1982), enf'd, 740 F.2d 811 (10th Cir.1984). In other words, the employees who were on layoff from the Company before the strike must be shown to have been individuals "whose work has ceased as a consequence of, or in connection with, any current labor dispute." 29 U.S.C. Sec. 152(3). To fall within this definition, these laid-off individuals must have had their ability to work for the Company curtailed by the strike. If the laid-off individuals fall within this definition, they are entitled to reinstatement.
 
 
 15
 All of the employees on layoff who picketed the Company had the ability to work for the Company during the strike. We affirm the Board's holding that laid-off employees who engaged in picketing were withholding their services from the employer and therefore were striking employees under the NLRA.
 
 
 16
 B. Bypassing Former Strikers for Spreader Crew Positions
 
 
 17
 In October 1984, as part of a plan to increase production, the Company decided to hire a new "spreader crew." For the four spreader crew positions, the Company hired four new employees who had had spreader crew experience at another facility. In hiring these outsiders, the Company bypassed four former strikers, Gerald Clouse, Terry Ragan, Terry Johnson, and Tim Smith,[1] who had been assigned to spreader crews at various times before the strike. The Company's asserted ground for rejecting the four former strikers for the crew was that they were not qualified. The record indicates that before the strike the Company had never hired new employees to serve on spreader crews; the Company had always assembled the spreader crews from its existing work force.
 
 
 18
 The ALJ and the Board found that the Company's failure to hire Ragan, Clouse, Johnson, and Smith for the available spreader crew positions was an unfair labor practice because the Company failed to show any legitimate and substantial business reasons for it. This finding is based on a proper interpretation of the law and on substantial evidence.
 
 
 19
 Former economic strikers have a right to reinstatement to any position for which they are qualified. Fleetwood Trailer, 389 U.S. at 378, 88 S.Ct. at 545. "The right can be defeated only if the employer can show 'legitimate and substantial business justifications.' " Id. at 381, 88 S.Ct. at 547.
 
 
 20
 The Company argues that the ALJ in this case improperly placed on the Company the burden of showing that Ragan, Clouse, Johnson, and Smith were not qualified for the spreader crew jobs. The case law supports the ALJ's having placed the burden of showing lack of qualification on the Company. Lack of qualification is one of numerous justifications that an employer might proffer in support of a decision not to reinstate a former striker. See NLRB v. Aluminum Cruiser, Inc., 620 F.2d 116, 117-18 (6th Cir.1980). Fleetwood clearly imposes the burden of showing justification on the employer. Thus, we affirm the Board's holding that it is the employer's duty to show that a striker who is a candidate for reinstatement is not qualified for an available position. Id.
 
 
 21
 Whether or not the burden is on the employer, the evidence clearly indicates that Ragan, Clouse, Johnson, and Smith were qualified. Each of them had experience in working on spreader crews. Before the strike, the Company had always formed spreader crews from its existing work force and had trained the workers. Therefore, it is safe to say that employees with some experience in spreader crew work are qualified under the Company's normal standards. The Company produced the testimony of Plywood Supervisor Rosendahl, who indicated that Smith and Johnson had very little experience and that Ragan and Clouse were ill-qualified to hold one of the positions. However, the ALJ found Rosendahl's testimony not credible.
 
 
 22
 Because the ALJ properly imposed the burden of showing lack of qualification on the Company and because substantial evidence supports the ALJ's finding that Ragan, Clouse, Johnson, and Smith were qualified, we affirm the Board's finding of an unfair labor practice.
 
 C. Termination of Jose Acosta
 
 23
 Jose Acosta, who participated in the strike, had been employed by the Company for approximately ten years as a "dryer feeder" on the day shift. When the strike collapsed, Acosta joined in the unconditional offer to return to work. On September 27, 1984, Gary Johnson, the Company's employee relations director, called and offered Acosta a temporary job in the particleboard department for one week on the day shift. Acosta accepted. On the next to last day of this temporary job, Johnson offered Acosta another temporary job, a one-week stint cleaning glue tanks during the graveyard shift. The job involved climbing, lifting, bending, and washing materials with water. Acosta, who had undergone hip surgery eight months previously and was advised by his doctor to avoid these activities, stated that he could not perform the task of cleaning the glue tanks for medical reasons. Johnson replied "Well, I don't believe you." Johnson later told Acosta that "[i]f anybody refuses any work, we'll terminate him." When Acosta maintained his refusal to take the glue tank cleaning job, Johnson terminated him. A few days later, Acosta called Johnson and asked to be given any work on the day shift. Johnson refused to give Acosta work, stating that he had been terminated. Id. at 117-18.
 
 
 24
 The ALJ and the Board found that the Company's termination of Acosta was an unfair labor practice. This finding is supported by substantial evidence.
 
 
 25
 Before the strike, Acosta had served on the day shift as a "dryer feeder," a position that was within Acosta's physical capabilities. After the strike, he was offered a job cleaning glue tanks, which involved difficult physical activity and was on the graveyard shift. Acosta testified that he was terminated solely for his refusal to accept the glue tank cleaning position. The ALJ found this testimony highly credible.
 
 
 26
 Acosta, as an economic striker, was entitled to reinstatement to his former position, to one substantially equivalent, or to one for which he was qualified. Fleetwood, 389 U.S. at 381, 88 S.Ct. at 547; General Teamsters Local 162 v. NLRB, 568 F.2d 665, 668 (9th Cir.1978). See also NLRB v. American Olean Tile Co., 826 F.2d 1496 (6th Cir.1987). The ALJ found that the glue tank cleaning job was not substantially equivalent to Acosta's old job. This finding is supported by substantial evidence. The glue tank cleaning job was more demanding physically, was particularly difficult for Acosta because of the hip surgery he had undergone, and was on a more onerous shift. See Burton Parsons & Co., 242 NLRB 487, 490 (1979). Because the glue tank cleaning job was not substantially equivalent to Acosta's former position, he was entitled to accept or reject it without affecting his status as an employee under section 152(3) or his right to reinstatement.
 
 
 27
 By terminating him and cutting off the possibility that he would be reinstated, the Company denied him the reinstatement rights protected by Fleetwood Trailer. We affirm the Board's holding that the Company committed an unfair labor practice when it terminated Acosta.
 
 
 28
 ENFORCEMENT GRANTED.
 
 
 
 [1]
 Tim Smith had been recalled to work when the spreader crew positions became available, but when he applied to be transferred from his present job to a spreader crew position, his application was rejected