**FOREST PRODUCTS COMPANY, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 88–1039.

United States Court of Appeals, Tenth Circuit.

Oct. 24, 1989.

Robert P. Tinnin, Jr. (Robert J. Wagoner with him on the brief), of Poole, Tinnin & Martin, P.C., Albuquerque, N.M., for petitioner.

Carmel Ebb, (Rosemary M. Collyer, General Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel and Paul J. Spielberg, Deputy Asst. Gen. Counsel, on the brief), N.L.R.B., Washington, D.C., for respondent.

Before MOORE and BALDOCK, Circuit Judges and DAUGHERTY, District Judge.*

BALDOCK, Circuit Judge.

Forest Products Company (Forest) petitions this court pursuant to 29 U.S.C. § 160(f) for review of a decision and order of the National Labor Relations Board (NLRB), holding that Forest violated the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(3), by refusing to match funds withheld from certain employees' wages under its Christmas savings program (program) because those employees were engaged in an economic strike on the program's disbursement date. *Forest Prod. Co. v. United Bhd. of Carpenters and Joiners*, 286 NLRB No. 128 slip op.

(1987). The General Counsel of the NLRB cross-petitions pursuant to 29 U.S.C. § 160(e) for enforcement of the Board's decision and order. Because the NLRB's decision is not supported by substantial evidence as required by § 160(e), we deny enforcement and set aside the order.

## I.

According to the stipulated record,[1] Forest is a Nevada corporation which, prior to ceasing operations on March 31, 1984, manufactured wood moulding and fingerjoint products at its principal place of business in Albuquerque, New Mexico. For eighteen years, Forest maintained a Christmas savings program for its employees, many of whom were members of the United Brotherhood of Carpenters and Joiners of America (Union). Under the terms of the program, participating employees agreed to have five percent of their monthly wage withheld and deposited in a separate fund. Forest agreed to contribute an additional five percent to the fund on December 10 of each year and distribute the proceeds. Finally, the agreement provided that "should an employee leave the employment of the company *for any reason* before the Christmas fund is distributed, he shall receive any money he has personally contributed to this fund, but shall not receive the company portion." (emphasis added).

On July 25, 1983, several union members commenced an economic strike against Forest. Some employees subsequently abandoned the strike and returned to work. Forest permanently replaced the remaining strikers prior to December 10, 1983. Twenty-six of the remaining strikers withdrew their program contributions before the distribution date but eighteen refused to do so. When Forest declined to match the deposited funds of this latter group, the Union instituted unfair labor practice charges with the NLRB on December 28, 1983. On November 30, 1987, the NLRB

---

\* Honorable Frederick A. Daugherty, Senior United States District Judge for the Western District of Oklahoma, sitting by designation.

1. On the basis of the parties' stipulation, this matter was transferred to the NLRB without a

prior hearing before an administrative law judge.

issued its decision and order finding that Forest had violated the NLRA. Among other things, the NLRB directed Forest to disburse matching funds to the affected employees and to cease and desist from discriminating against the employees by withholding the funds.

## II.

Section 8(a)(3) of the NLRA provides that "[i]t shall be an unfair labor practice for an employer by discrimination in regard to ... any term or condition of employment to ... discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). This statute contemplates disparate treatment of union members which is likely to discourage union membership and is motivated by anti-union animus. Congress did not intend to make unlawful all acts that might discourage union membership. *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 700, 103 S.Ct. 1467, 1472–1473, 75 L.Ed.2d 387 (1983). Where only circumstantial evidence of intent to discriminate is present, as in this case, intent must be inferred from conduct. The Supreme Court has divided such conduct into two classes. Some conduct is "so inherently destructive of employee interests" that even if an employer provides nondiscriminatory justification for its actions, the NLRB still *may draw* an inference of improper motive from the conduct itself by balancing the asserted justification against the invasion of employee rights. *NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26, 33–34, 87 S.Ct. 1792, 1797–1798, 18 L.Ed.2d 1027 (1967). Conversely, in cases where an employer's conduct results in "comparatively slight" harm to employees' rights, the union *must prove* anti-union motivation *if* the employer produces evidence of "legitimate and substantial business justifications" for its actions. *Id.* at 34, 87 S.Ct. at 1798. The employer may meet this burden by showing "good faith reasonable reliance" upon the terms of an agreement. *Conoco, Inc. v. NLRB*, 740 F.2d 811, 815 (10th Cir.1984). In this regard, "the NLRB may not formulate its own interpretation of the contract, but is limited to determining the truth of the employer's assertions regarding its contractu-

al obligations, based upon the reasonableness and bona fides with which the employer held its belief." *Id.*

## III.

Forest acknowledges that the General Counsel of the NLRB established a prima facie case for a violation of the NLRA by showing that accrued benefits were withheld from union members because of their strike. *See Texaco Oil Co.*, 285 NLRB No. 45 ¶ 18,871 at 32,290 (CCH 1987) (General Counsel bears initial burden of proving some adverse effect of benefit denial on employee rights). Forest contends, however, that it justified withholding its contribution to the program based on past business practice and a legitimate contract interpretation which resulted in a denial of matching funds to any employee not "actively working" for the company on December 10, the fund's disbursement date. The NLRB rejected Forest's position and concluded that Forest failed to show any nondiscriminatory justification for denying the employees benefits. Consequently, the NLRB did not reach the question of whether the company's actions fell within the "inherently destructive" or "comparatively slight" category. *See Great Dane Trailers*, 388 U.S. at 34–35, 87 S.Ct. at 1798 (where company failed to proffer evidence of legitimate motives for its facially improper conduct, court did not decide degree to which conduct affected employee rights).

## A.

Throughout the eighteen year history of the Christmas program, Forest has considered employees on leave or layoff status as of December 10 ineligible for matching funds because they are neither actively working nor necessarily expected to resume active work. This policy is entirely consistent with the NLRB's construction of the program's enrollment form: "According to the provisions of the Fund's enrollment form, Fund participants must be employed by the Respondent [Forest] on the distribution date to be entitled to matching contributions." *Forest Prod.*, slip op. at 6.

The form plainly states that if an employee leaves Forest's employment *"for any reason"* prior to the fund's distribution, that employee will not receive matching funds. Forest recognized that striking employees who had been supplanted by permanent replacements had left the company's employment and concluded that these employees were not eligible for employer matching funds. This conclusion was entirely reasonable. Forest's consistent application of the form's provision to those persons on strike, layoff or leave belies any notion that Forest treats employees absent from work due to strike activity differently than employees absent for other reasons.[2] *See Bil–Mar Foods, Inc.*, 286 NLRB No. 82 ¶ 19,089 at 32,892 (CCH 1987).

To reach its decision, the NLRB cited Forest's general practice of refunding an employee's contributions to the program at the time the employee took leave or was laid off, i.e. when the employee ceased to be carried on the payroll as actively working. The NLRB noted that in this case, Forest did not refund a striker's contribution prior to the distribution date unless requested to do so. Forest, however, presented a manifestly plausible explanation of this seemingly different treatment which the NLRB did not address. On July 26, 1983, the Union filed unfair labor practice charges with the NLRB alleging that Forest's actions violated § 8(a)(5) of the NLRA, 29 U.S.C. § 158(a)(5), thereby converting the strike from an economic strike to an unfair labor practice strike. Although the NLRB upheld the regional director's dismissal of the complaint on January 11, 1984, had the Union prevailed on these charges the employees would have been entitled to reinstatement with back pay and no doubt could have continued their participation in the program. *See Harding Glass Indus., Inc. v. National Labor Relations Bd.*, 672 F.2d 1330, 1338 (10th Cir.1982). Forest merely acted prudently in the face of uncertainty. By retaining the striker's contributions, Forest maintained their potential eligibility for matching funds until the distribution date. Accordingly, we conclude that Forest met its burden by presenting a legitimate and substantial business justification for withholding benefits from the strikers. The NLRB's finding to the contrary is not supported by substantial evidence.

B.

The General Counsel of the NLRB does not seriously contend that Forest's withholding of benefits under the Christmas savings program was "inherently destructive of employee interests." In *Great Dane Trailers*, 388 U.S. at 26, 87 S.Ct. at 1792, the Supreme Court instructed us that conduct is "inherently destructive" if it "carries with it 'unavoidable consequences which the employer not only foresaw but which he must have intended' and thus bears 'its own indicia of intent.'" *Id.* at 33, 87 S.Ct. at 1797 (quoting *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 228, 231, 83 S.Ct. 1139, 1145, 1147, 10 L.Ed.2d 308 (1963)). Circuit courts generally define "inherently destructive" conduct as that "with far reaching effects which would hinder future bargaining, or conduct which discriminates solely upon the basis of participation in strikes or union activity." *Vesuvius Crucible Co. v. NLRB*, 668 F.2d 162, 169 (3d Cir.1981) (quoting *Portland Willamette Co. v. NLRB*, 534 F.2d 1331, 1334 (9th Cir.1976)). *Accord International Bhd. of Boilermakers v. NLRB*, 858 F.2d 756, 762–764 (D.C.Cir.1988); *NLRB v. Sherwin–Williams Co.*, 714 F.2d 1095, 1101 (11th Cir.1983); *NLRB v. Haberman Constr. Co.*, 618 F.2d 288, 298 (5th Cir. 1980).

Applying these principles, we can locate nothing in the stipulated record to support a conclusion that Forest's actions hindered the Union's future bargaining position or the exercise of its members rights. Because the record is devoid of such evidence, we are unable to conclude that Forest's withholding of benefits "bears its own indicia of intent." Thus, the General Counsel

---

**2.** The record contains evidence of only *one* occasion over the course of eighteen years when Forest made a matching contribution to an employee on leave. We do not deem this single occurrence "substantial evidence" of any unlawful discrimination against the strikers.

of the NLRB was required to adduce actual proof of anti-union animus to sustain the NLRB's determination that Forest violated the NLRA in this instance. The stipulated record does not contain evidence sufficient to sustain the charges against Forest.

Enforcement DENIED; Order SET ASIDE.