# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-2904

_____

National Labor Relations     *
Board,     *
    *
       Petitioner,     *   Petition for Review of the
    *   Decision and Order of the
     v.     *   National Labor Relations Board.
    *
Swift Adhesives, Division of     *
Reichhold Chemicals, Inc.,     *
    *
       Respondent.     *

_____

Submitted: February 14, 1997

Filed: April 14, 1997

_____

Before BOWMAN and WOLLMAN, Circuit Judges, and KOPF,[1] District
     Judge.

_____

WOLLMAN, Circuit Judge.

The National Labor Relations Board (Board) found that Swift Adhesives (Swift) violated sections 8(a)(1) & 8(a)(3) of the National Labor Relations Act (the Act), 29 U.S.C. §§ 158(a)(1) & (a)(3), by withholding accrued vacation benefits of former employees who were terminated following their participation in a strike in the fall of 1993. The Board ordered Swift to pay the accrued vacation benefits. We grant the Board's petition for enforcement of the order.

_____

[1]The HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska, sitting by designation.

Under the terms of the collective bargaining agreement in effect during pre-strike 1993, employees who had been employed 196 calendar days were eligible for vacation benefits. Vacation was to be taken the following calendar year, but employees terminated for any reason could receive the vacation benefits for which they had become eligible. This agreement expired on September 30, 1993, and the employees began a strike on October 1, 1993, after negotiations reached impasse. All striking employees had become eligible for benefits under the expired agreement prior to the strike.

On January 4, 1994, the Union[2] requested that Swift pay the striking employees for their earned vacation days. Swift refused to pay unless the employee had actually worked 196 days in 1993, asserting that the 196 actual-days-worked requirement was part of Swift's final offer after impasse and was therefore the relevant governing term. Accordingly, Swift paid vacation benefits to seven employees who had actually worked 196 days in 1993, but denied vacation pay to fifteen employees who had been employed for, but had not actually worked, 196 days.

A hearing was held before an administrative law judge (ALJ), who determined that Swift had violated the Act by refusing to pay the accumulated vacation benefits. The Board affirmed, finding that the employees had accrued vacation benefits, that the denial of those benefits was a direct result of the strike, and that Swift had failed to establish a legitimate and substantial business reason for denying the accrued vacation benefits.

---

[2]United Food & Commercial Workers Union, Local 576.

**II.**

We review the Board's order with great deference and will enforce the order if the Board correctly applied the law and if its findings of fact are supported by substantial evidence on the record as a whole. See Town & Country Elec., Inc. v. NLRB, 106 F.3d 816, 819 (8th Cir. 1997); Universal Camera Corp. v. NLRB, 340 U.S. 474, 490-91 (1951); 29 U.S.C. § 160(e).

The Supreme Court has outlined the framework by which a violation of sections 8(a)(3) and (1) of the Act may be established. First, the Board must show "that the employer engaged in discriminatory conduct which could have adversely affected employee rights to some extent." NLRB v. Great Dane Trailers, Inc., 388 U.S. 26, 34 (1967). Once this has been proved, the employer must establish "legitimate objectives" for taking the complained-of action. See id.

An employer's discriminatory conduct can be shown by establishing that the employees' benefits were accrued and that the denial of payment was apparently based on the employees' participation in a strike. See Texaco, Inc., 285 N.L.R.B. 241, 245 (1987). Benefits are accured if they were "'due and payable on the date on which the employer denied them.'" Conoco, Inc. v. NLRB, 740 F.2d 811, 814 (10th Cir. 1984) (quoting E.L. Wiegand Div., Emerson Elec. Co. v. NLRB, 650 F.2d 463, 469 (3d Cir. 1981)). The striking employees had all been employed at Swift for at least 196 calendar days, the only requirement for eligibility under the pre-strike agreement. Moreover, that agreement provided that an employee terminated for any reason was entitled to receive the vacation benefits for which they had become eligible. These facts constitute substantial evidence supporting the Board's conclusion

that the vacation benefits were due and payable.  See Great Dane, 388 U.S. at 32 (vacation benefits were accrued because employees met conditions specified in expired employment contract, despite fact employees were striking on date benefits could be claimed).

Likewise, substantial evidence supports the Board's conclusion that Swift's denial of accrued vacation benefits was apparently based on the employees' participation in the strike.  When all employees strike, as here, discrimination against striking employees lies in a difference in treatment between the employees' treatment before and after the strike.  See Kansas City Power & Light Co. v. NLRB, 641 F.2d 553, 557 (8th Cir. 1981).  Had the employees quit, been fired, or died before the strike they would have been entitled to their vacation pay.

Swift's action could adversely affect the employees' rights.  Its conduct, when "considered from a common sense point of view, is bound to have a discouraging effect on present and future concerted activities," for the consequence is that employees cannot strike without placing their accrued vacation pay in jeopardy.  See id. at 559; see also Great Dane, 388 U.S. at 32 ("There is little question but that the result of [a] company's refusal to pay vacation benefits to strikers [is] discrimination in its simplest form.").[3]

The Board rejected Swift's explanation that it was entitled to unilaterally assert new terms regarding the accrued vacation benefits once negotiations reached impasse.  The Board concluded that already-accrued vacation benefits were a non-mandatory subject

---

[3]Swift argues that the fact that it paid vacation pay to the seven employees who qualified under the new contract shows that it did not discriminate against strikers.  This argument is unpersuasive, however, for it fails to rebut the fact that Swift treated the employees differently before and after the strike.

of bargaining for which Swift could not unilaterally implement terms. The rule that wages, hours, terms and conditions of employment are mandatory subjects of bargaining for which employers may unilaterally implement terms after impasse does not include accrued wages and benefits that are due and owing, as these items are debts arising out of contracts already concluded. See R.E. Dietz Co., 311 N.L.R.B. 1259, 1266 (1993). The Board's determination of the non-mandatory nature of accrued benefits "has reasonable basis in law and is not inconsistent with the structure of the Act." LaTrobe Steel Co. v. NLRB, 630 F.2d 171, 176 (3d Cir. 1980) (standard of review) (citing Ford Motor Co. v. NLRB, 441 U.S. 488, 497 (1979)). Thus, the Board did not misapply the law in determining that Swift's right to impose terms relating to mandatory subjects of bargaining after impasse did not constitute a legitimate and substantial reason for retroactively denying accrued vacation benefits.

Swift contends that its desire to ensure that employees work a significant portion of the year before receiving vacation benefits justified its action. Although this purported justification might constitute a legitimate reason for changing the vacation benefits policy prospectively, it fails to justify denying benefits already accrued. Thus, the Board did not err in finding that Swift had failed to show that its denial of vacation benefits was based on a legitimate business objective.

The Board's order is enforced.

A true copy.

Attest:

       CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.